IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL BERRY, #R49732, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 23-cv-00892-SMY |
| ) | |
| PERCY MYERS, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**Yandle, District Judge**:

Plaintiff Michael Berry, currently an inmate at Danville Correctional Center, filed this lawsuit pursuant to 42 U.S.C. § 1983, claiming deliberate indifference to serious medical needs and seeking injunctive relief. Pending before the Court are Defendants Dr. Percy Myers' and Warden John Barwick's motions for summary judgment (Docs. 36, 39). Plaintiff responded in opposition[1] (Docs. 41, 42). For the following reasons, the motions are **GRANTED**.

## Background

The following facts are derived from Plaintiff's deposition, are undisputed unless otherwise indicated, and are taken in the light most favorable to Plaintiff: Plaintiff Michael Berry has a history of eczema dating back to childhood (Doc. 36-1, p. 9 ¶31; Doc. 41, p. 1 ¶3). In 2019, while incarcerated at Stateville Correctional Center, he developed a new skin condition, later diagnosed as hyperpigmented lesion and acanthosis following a biopsy (Doc. 39-3, pp. 40–41). Berry described the condition as starting out like a red bruise on his arms, shoulders, and

---

[1] Plaintiff's request for appointment of counsel in his response (Doc. 41) is moot, as the Court has since denied his separate motion for counsel (Docs. 43–44).

legs, which turn black after healing (Doc. 36-1, pp. 10–11). He attributed this condition to exposure to sewage water in his cell and subsequently filed a lawsuit against Stateville in the Northern District of Illinois, which was later settled (Doc. 36-1, pp. 7–8).

On September 25, 2019, Berry was transferred to Pinckneyville Correctional Center and began working as a barber shortly thereafter (Doc. 36-1, pp. 4–5 ¶¶10–11, 17). On November 14 ,2019, he met with Dr. Percy Myers to discuss the biopsy results conducted at Stateville; Dr. Myers informed him that his condition was untreatable but not infectious or contagious (*Id.*, pp. 14–15 ¶¶53–54).

In January 2021, Berry changed positions and began working in the clothing shop at Pinckneyville (Doc. 36-1, p. 4 ¶11). On February 1, 2021, he reported to a nurse that his skin rash had not been treated since his arrival to Pinckneyville. Two days later, he visited Dr. Myers, who reaffirmed the hyperpigmented lesion diagnosis and later prescribed hydrocortisone cream (Doc. 39-3, pp. 45–48).

In April 2022, Berry sought medical attention after reporting that his skin condition had spread to his armpits and groin (Doc. 36-1, p. 23). A physician assistant examined him and prescribed medication, which cleared up the rash (*Id.*).

On July 27, 2022, Berry's attorney in his Northern District of Illinois case told him that hyperpigmented lesion is treatable (Doc. 36-1, p. 23). Berry subsequently filed a grievance on August 1, 2022, which was denied on August 26, 2022 (Doc. 39-5, pp. 2–3). On March 20, 2023, Berry filed the Complaint in the instant case (Doc. 1).

On October 23, 2023, Berry visited Dr. Myers, who referred him to a dermatologist (Doc. 36-1, p. 33 ¶127). At Southern Illinois Dermatology, a physician assistant performed a punch

biopsy (Doc. 39-5, p. 6). Upon Berry's return, Dr. Myers prescribed clobetasol ointment and hydroxyzine (Doc. Doc. 36-1, p. 36 ¶140–41).

Berry remained employed in the clothing shop at Pinckneyville until his transfer to Danville in December 2023 (Doc. 36-1, p. 4 ¶¶10–12). At Danville, Berry saw a nurse to discuss his dermatology biopsy results, which showed prurigo nodule (Doc. 39-4, p. 66). Berry testified the nurse basically went over the same thing like Dr. Myers did in the beginning, saying "It's not cancerous, you have nothing to worry about." (Doc. 36-1, p. 37 ¶145).

## Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). The moving party is entitled to summary judgment if the non-moving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the evidence is merely colorable or not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

As a threshold matter, Defendant contends that Illinois' two-year statute of limitations bars Berry's claims against Dr. Myers. While Defendant identifies potential tolling dates— November 14, 2019, when Berry first saw Dr. Myers, or February 3, 2021, when he saw Dr. Myers a second time—neither marks a clear point at which Berry knew or should have known he was being denied adequate care. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (The statute of limitations for a § 1983 deliberate indifference claim begins when the plaintiff knows

of the injury and its cause.). According to Berry, he did not realize his condition was treatable until July 27, 2022, when his attorney informed him. Viewing the record in the light most favorable to Plaintiff, the Court considers July 27, 2022, as the accrual date, and finds the action timely.

To prevail on an Eighth Amendment claim for the denial of medical care, a plaintiff must prove (a) the existence of an objectively serious medical need; and (b) deliberate indifference to that condition by each defendant. *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457-58 (7th Cir. 2020). An objectively serious medical need is one that has been diagnosed by a physician as requiring treatment or one where the need for treatment would be obvious to a lay person. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference occurs when a defendant knows about and disregards an excessive risk to inmate health. *Id*.

### Dr. Percy Myers

Dr. Myers argues there is no evidence that Berry has or had an objectively serious medical condition (Doc. 39, pp. 17–19). An objectively serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *ZentMyers v. Kendall Cty. Ill.*, 220 F.3d 805, 810 (7th Cir. 2000). The Court agrees.

Berry's skin condition does not rise to the level of a serious medical need under the Eighth Amendment. Berry worked in the clothing department throughout his time at Pinckneyville, with no evidence that his condition interfered with his daily activities. Moreover, there is no evidence that Berry suffered any physical pain or injury from the condition. *See Pierce v. Foster*, Case NoI 16-cv-1287-MJR, 2017 WL 748952, *3 (S.D. Ill. Feb. 27, 2017) (rash generally does not qualify as objectively serious medical condition); *c.f. Myrick v. Anglin*,

496 Fed.Appx. 670, 674 (7th Cir. 2012) (skin infections resulting in excruciating pain constitute a serious condition to support an Eight Amendment claim).

Even if Berry had established that he has a serious medical condition, he has not demonstrated that Dr. Myers was deliberately indifferent to his medical needs. To establish deliberately indifference, a prisoner needs to show an official "acted in an intentional or criminally reckless manner." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Dr. Myers first saw Berry on November 14, 2019, shortly after his transfer to Pinckneyville, and discussed the results of his biopsy, which indicated a benign, non-infectious hyperpigmented lesion. At the time of his second visit with Dr. Myers on February 3, 2021, Berry made no new complaints, and Dr. Myers prescribed hydrocortisone cream. Later, in October 2023, Dr. Myers referred him to a dermatologist when the lesions persisted. He subsequently prescribed clobetasol ointment and hydroxyzine[2].

There is no evidence that Dr. Myers ignored Berry's condition or that his response to Berry's condition was any different than how any minimally competent physician would have responded under the circumstances. *Collingnon v. Milwaukee Cty.*, 163 F.3d 982, 989 (7th Cir. 1998) (To show deliberate indifference, a plaintiff must show the provider's response was so inadequate that no minimally competent professional would have acted similarly.) As such, Dr. Myers is entitled to summary judgment.

---

[2] Clobetasol topical is used to treat the itching, redness, dryness, crusting, scaling, inflammation, and discomfort of various scalp and skin conditions, including psoriasis (a skin disease in which red, scaly patches form on some areas of the body) and eczema (a skin disease that causes the skin to be dry and itchy and to sometimes develop red, scaly rashes). See MedlinePlus, https://medlineplus.gov/druginfo/meds/a686008.html (last visited July 2, 2025); Hydroxyzine is an antihistamine that relieves itching and calms anxiety or allergies. See MedlinePlus, https://medlineplus.gov/druginfo/meds/a682866.html (last visited July 2, 2025).

**John Barwick (Warden)**

Because Berry also requested injunctive relief, the Court added the Warden of Pinckneyville Correctional Center in his official capacity, as a defendant, in its merit review order (Doc. 13).  However, Berry has been transferred from Pinckneyville and has been housed at Danville since December 2023.  Thus, any claim for injunctive relief while confined at Pinckneyville is moot unless he demonstrates a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the same conditions he complains of herein.  *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009)).

Berry argues his injunctive relief against Barwick remains appropriate because "Pinckneyville Correctional Center do[es] not have a dermatologist" (Doc. 42).  But he provides no evidence of a realistic possibility that he will again be subjected to the conditions alleged in this lawsuit.  Therefore, John Barwick, in his official capacity, is entitled to summary judgment.

### Conclusion

For the foregoing reasons, Defendants' motions for summary judgment (Docs. 36, 39) are **GRANTED**.

    **IT IS SO ORDERED.**

    **DATE: September 22, 2025**

                                       **STACI M. YANDLE**
                                       **United States District Judge**